1  MICHAEL N. NICASTRO #161188
   NICASTRO PISCOPO, APLC
2  575 Anton Boulevard, Suite 1050
   Costa Mesa, CA 92626
3  Telephone:  (714) 479-1000
   Facsimile:  (714) 479-0909
4  courtfilings@np-attorneys.com

5  Proposed Attorneys for Chapter 7 Trustee,
   PETER J. MASTAN

6

7                    UNITED STATES BANKRUPTCY COURT

8            CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

9

10  **In re**                          Case No.  2:16-bk-12727-DS

11  **ROBERTO MORALES**                Chapter  7
    **RAMONA MORALES**
12                                     **NOTICE OF MOTION AND MOTION FOR
        **Debtors.**                   ORDER APPROVING SALE OF
13                                     STRUCTURED SETTLEMENT ANNUITY;
                                       DECLARATIONS OF PETER J. MASTAN
14                                     AND MICHAEL N. NICASTRO; AND
                                       EXHIBITS IN SUPPORT**
15
                                       Hearing:
16                                     Date: March 28, 2017
                                       Time: 10:30 a.m.
17                                     Ctrm: 1339

18

19

20  **TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY

21  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTORS ROBERTO

22  MORALES AND RAMONA MORALES, AND ALL OTHER INTERESTED PARTIES:**

23          **NOTICE IS HEREBY GIVEN** that Peter J. Mastan, Chapter 7 Trustee ("Trustee") of

24  the bankruptcy estate ("Estate") of Robert Morales and Ramona Morales ("Debtors") filed with

25  the United States Bankruptcy Court, 255 E. Temple Street, Los Angeles, CA 90012, a "Motion

26  for Order Approving Sale of Structure Settlement Annuity" ("Motion").  Specifically, through

27  the Motion, the Trustee seeks an order that does each of the following:

28

1.     Authorizes the Trustee to sell the Structured Settlement Annuity ("Annuity"), with outstanding payments due between April 1, 2017 and December 1, 2027 totaling $201,232.50, outside the ordinary course of business to the buyer Settlement Capital Corporation for $112,000 or to the successful overbidder at the sale hearing for the amount of the overbid. Settlement Capital Corporation or the successful overbidder are referred to herein as the "Buyer."

2.     Approves the Assignment Agreement between Buyer and the Trustee attached as "3" to the Declaration of Peter J. Mastan.

3.     Approves the following bidding procedures.

a.     Any person or entity (other than Settlement Capital Corporation) that is interested in purchasing the Annuity must appear at the hearing on the Motion and bring a deposit of certified funds in the amount of the bid.  Unless otherwise permitted by the Court, any bidder that fails to submit a timely, conforming bid shall be disqualified from bidding for the Annuity.

b.     The Trustee, subject to the rights of a bidder or party in interest to raise an issue with the Court, shall have sole authority to determine whether a party is a qualified bidder.

c.     Bids are irrevocable and any bid must remain open until the conclusion of the sale to be held at the hearing on this Motion.

d.     Any overbidder must agree to the same terms as the Assignment Agreement between Settlement Capital Corporation and the Trustee.

e.     Any overbid must provide for a minimum purchase price of at least $117,000.  Additional overbids must be in increments of $5,000.

f.     Any overbid must be for the Annuity "as is, where is" and shall not contain any financing, due diligence, or any other contingency or any breakup fee, termination fee, or any similar fee/expense reimbursement.

g.     Any overbid must be made by a person or entity that has completed its due diligence review of the Annuity and is satisfied with the results.

2

h.    The purchase price deposit must be in the form of certified funds or cashier's check payable to the Trustee, which amount shall be nonrefundable if the bid is determined by the Court to be the highest and best bid for the Annuity.

i.    All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the sale of the Annuity.

4.    Authorizes the Trustee to sign all documents necessary to consummate the sale.

5.    Authorizes the Trustee to pay the other costs of sale.

6.    Waives the 14-day stay regarding the effectiveness of the order.

7.    Affords the buyer the protections set forth in 11 U.S.C. § 363(m) as a good faith purchaser.

8.    Determines that adequate notice of the hearing on the Motion was given.

9.    Reserves Bankruptcy Court jurisdiction to enforce the Assignment Agreement.

The Trustee marketed the Annuity by contacting several companies in the business of purchasing structured settlement annuities. Aside from one offer that was later rescinded, Buyer made the highest offer. The sale will be noticed on the Court's website and qualified overbids accepted.

**NOTICE IS GIVEN** that the Motion is made pursuant to 11 U.S.C. §§ 363(b) and 363(m), Federal Rules of Bankruptcy Procedure 2002 and 6004, and Local Bankruptcy Rules 6004-1 and 9013-1 on the grounds that the proposed sale is in the best interests of the Estate.

**NOTICE IS GIVEN** that the Motion is based on (a) this Notice of Motion; (b) the Motion, Declaration of Peter J. Mastan, Declaration of Michael N. Nicastro, and Exhibits; (c) the concurrently filed Notice of Sale of Estate Property; and (d) such further evidence that may be properly submitted prior to or at any hearing on the Motion.

**NOTICE IS GIVEN** that any interested party is entitled to support, oppose, or otherwise respond to the Motion, either in person or by counsel, by submitting written comments to the Court or by participating in the hearing. Any opposition to the Motion must be in the form as required by Local Bankruptcy Rule 9013-1(f) and filed with the Clerk of the above-entitled

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Court no later than fourteen (14) days prior to the hearing date set forth above, and a copy served on Nicastro Piscopo, APLC to the attention of Michael N. Nicastro at the address indicated in the caption above. A copy of any response must also be served on the Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701.  Failure to timely respond may be deemed as acceptance of the proposed relief and the Court may grant the relief requested in the Motion without further notice or hearing. See, Rule 9013-1(h) of the Local Bankruptcy Rules.

DATED:   February 24, 2017                          NICASTRO PISCOPO, APLC

                                        By::   /s/ Michael N. Nicastro
                                            Michael N. Nicastro
                                            Attorneys for Peter J. Mastan, Chapter 7
                                            Trustee of the Bankruptcy Estate of
                                            Roberto Morales and Ramona Morales

4

71288v1/1028-003

## TABLE OF CONTENTS

1.    INTRODUCTION    8

2.    FACTS    10

3.    TERMS OF SALE    11

4.    OVERBID PROCEDURES    12

5.    SALE PERMITTED DESPITE ANTI-ALIENATION LANGUAGE    13

6.    GROUNDS FOR APPROVAL OF THE SALE    13

    a. Business Judgment    15

    b. Good Faith    15

    c. Reasonableness and Fairness of the Sale    15

    d. Required Disclosure    16

    e. Proper Document Presented to the Court    16

    f. Advisory Statement    17

    g. Attorney General Notice    18

    h. Additional Factors    18

7. WAIVER OF THE FOURTEEN-DAY PERIOD FOR

EFFECTIVENESS OF SALE ORDER    21

8. GOOD FAITH PURCHASER DETERMINATION    22

9. CONCLUSION    23

DECLARATION OF PETER J. MASTAN    24

DECLARATION OF MICHAEL N. NICASTRO    27

1

### TABLE OF AUTHORITIES

2

11 U.S.C. § 363(m)                                                          9, 22, 23

3

California Code of Civil Procedure §§ 704.140(d), 704.150(c)                10

4

California Code of Civil Procedure § 703.140(b)(5)                          10

5

California Code of Civil Procedure § 703.140(b)(1)                          10

6

11 U.S.C. § 363                                                             11

7

11 U.S.C. § 541(c)(1)(A)                                                    13

8

*In re Pipkins*, 2014 WL 2756552, at *8 (Bankr. N.D. Cal. June 16, 2014)    13

9

*321 Henderson Receivables Origination LLC v. Sioteco*,
10          173 Cal.App.4th 1059 (2009)                                     13

11

11 U.S.C. § 704(a)(1)                                                       13, 15

12

11 U.S.C. § 363(b)                                                          13, 14, 16, 22

13

*In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995)          13

14

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*,
15          722 F.2d 1063, 1069 (2nd Cir. 1983)                             13, 14

16

*In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984)          13

17

*Stephens Ind., Inc. v. McClung*, 789 F.2d 836 (6th Cir. 1986)            14

18

*In re Walter*, 83 B.R. 14, 19-20, (9th Cir. BAP 1988)                     14

19

*In re Industrial Valley Refrigerator and Air Conditioning Supplies, Inc.*,
20      77 B.R. 15, 21 (Bankr. E.D. Pa. 1987)                              14, 22

21

California Insurance Code §§ 10134-10139.5                                  14

22

Cal. Ins. Code, § 10139.5                                                   15, 18

23

Cal. Ins. Code § 10136(c)(1)                                               15

24

California Insurance Code § 10137(a)                                        15

25

California Insurance Code § 10139.5(f)(2)                                   16

26

California Insurance Code §10139.5(c)(6)                                   16

27

California Insurance Code §10139.5(a)                                      16

28

California Insurance Code §10136(b)                                        17

California Insurance Code § 10139.5(h)                                     18

1

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure                    21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING SALE OF STRUCTURED SETTLEMENT ANNUITY

71288v1/1028-003

## 1.    **INTRODUCTION**

The Chapter 7 Trustee, Peter J. Mastan ("Trustee" or "Applicant") of the Bankruptcy Estate of Roberto Morales and Ramona Morales ("Debtors") moves the Court for an order approving the sale of Debtors' structured settlement annuity payments due from April 1, 2017 to December 1, 2027, which total $201,232.50, to Settlement Capital Corporation for $112,000 subject to overbid.  The Trustee believes that the sale is in the best interest of the Estate because (1) it will provide a lump sum that can be used to pay allowed claims immediately and avoid the costs of continuing to administer this Estate for the several years while annuity payments are received and (2) the Trustee has a duty to promptly liquidate property under 11 U.S.C. § 704.

The Trustee therefore specifically moves for an order that:

1.    Authorizes the Trustee to sell the Structured Settlement Annuity ("Annuity"), with outstanding payments due between April 1, 2017 and December 1, 2027 totaling $201,232.50, outside the ordinary course of business to the buyer Settlement Capital Corporation for $112,000 or to the successful overbidder at the sale hearing for the amount of the overbid. Settlement Capital Corporation or the successful overbidder are referred to herein as the "Buyer."

2.    Approves the Assignment Agreement between Buyer and the Trustee attached as Exhibit 3 to the Declaration of Peter J. Mastan.

3.    Approves the following bidding procedures.

a.    Any person or entity (other than Settlement Capital Corporation) that is interested in purchasing the Annuity must appear at the hearing on the Motion and bring a deposit of certified funds in the amount of the bid.  Unless otherwise permitted by the Court, any bidder that fails to submit a timely, conforming bid shall be disqualified from bidding for the Annuity.

b.    The Trustee, subject to the rights of a bidder or party in interest to raise an issue with the Court, shall have sole authority to determine whether a party is a qualified bidder.

MOTION FOR ORDER APPROVING SALE OF STRUCTURED SETTLEMENT ANNUITY

71288v1/1028-003

c.      Bids are irrevocable and any bid must remain open until the conclusion of the sale to be held at the hearing on this Motion.

d.      Any overbidder must agree to the same terms as the Assignment Agreement between Settlement Capital Corporation and the Trustee.

e.      Any overbid must provide for a minimum purchase price of at least $117,000.  Additional overbids must be in increments of $5,000.

f.      Any overbid must be for the Annuity "as is, where is" and shall not contain any financing, due diligence, or any other contingency or any breakup fee, termination fee, or any similar fee/expense reimbursement.

g.      Any overbid must be made by a person or entity that has completed its due diligence review of the Annuity and is satisfied with the results.

h.      The purchase price deposit must be in the form of certified funds or cashier's check payable to the Trustee, which amount shall be nonrefundable if the bid is determined by the Court to be the highest and best bid for the Annuity.

i.      All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the sale of the Annuity.

4.      Authorizes the Trustee to sign all documents necessary to consummate the sale.

5.      Authorizes the Trustee to pay the other costs of sale.

6.      Waives the 14-day stay regarding the effectiveness of the order.

7.      Affords the buyer the protections set forth in 11 U.S.C. § 363(m) as a good faith purchaser.

8.      Determines that adequate notice of the hearing on the Motion was given.

**9.**      Reserves Bankruptcy Court jurisdiction to enforce the Assignment Agreement.

9

## 2.    FACTS[1]

On March 4, 2016, the Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.  Peter J. Mastan was appointed as Chapter 7 Trustee ("Trustee").

In Schedule B of the Debtors' bankruptcy schedules, the Debtors listed an interest in the proceeds from a wrongful death structured settlement for the wrongful death of Debtors' son in the sum of $229,004.48 ("Annuity").  Schedule B indicates that the settlement was "Set up as an annuity."  At their 341(a) meeting, Debtors' indicated that they received the settlement as a result of their son's wrongful death in 1993.

In Debtors' original Schedule C, the Debtors claimed the full value of the Annuity exempt under California Code of Civil Procedure §§ 704.140(d), 704.150(c) related to personal injury and wrongful death proceeds.  These sections limit the exemption to funds received on account of the wrongful death of a person on whom the debtor was dependent.  The Trustee's attorney, on behalf of the Trustee, contacted the Debtors' counsel and informed him of the error in claiming these exemptions because the Debtors' son was not a person on whom the Debtors were dependent.

On June 3, 2016, Debtors filed an amended Schedule C claiming the full value of the Annuity exempt under California's wildcard exemption, California Code of Civil Procedure § 703.140(b)(5).  The Trustee's attorney, on behalf of the Trustee, contacted the Debtors' counsel and informed him of the error in claiming this exemption in the full value of the annuity because the wild card exemption is limited to $1,280 plus any unused homestead exemption under § 703.140(b)(1).

On June 6, 2016, Debtors filed an amended Schedule C claiming $26,625 of the Annuity exempt under California's wildcard exemption.  Attached below as Exhibit "1" is a true and correct copy of Debtors' June 6 Amended Schedule C.

The Trustee, through his attorney, obtained a copy of the Debtors' settlement agreement, which required the purchase of the annuity, and he received a copy of the annuity.  The settlement agreement contains a confidentiality provision.  The settlement also contains an anti-alienation provision, which as explained below, is unenforceable.  Without disclosing the parties

---

[1] The following facts are based on the Declaration of Peter J. Mastan and the Declaration of Michael N. Nicastro.

10

or the terms of the settlement agreement, the Trustee can disclose that the settlement agreement provided for the purchase of a Single Premium Annuity ("Annuity") for Debtors.

The Annuity was issued by Commonwealth Life Insurance Company ("Commonwealth").  A copy of the Annuity is attached as Exhibit "2" to the Declaration of Michael N. Nicastro.  The Annuity provides for guaranteed monthly payments of $645.86 to Debtors through August 1, 2027 plus several lump sum payments.  The remaining outstanding lump sum payments due are $10,500 on December 1, 2024 and $110,000 on December 1, 2027.  The total payments due under the Annuity from April 1, 2017 to December 1, 2027 are $201,232.50.

The Trustee also received a copy of a letter accompanying the Annuity policy that states that the "payments cannot be sold, assigned, accelerated or encumbered" and that these "rights are held by the annuity owner."  (Declaration of Michael N. Nicastro, Ex. 4.)  The Annuity policy itself states: "You may change the Owner or the Beneficiary, unless an irrevocable one has been named."  The policy further states "Only you may make an assignment of this policy." (Nicastro Decl., Ex. 2, at p. 6.)  Thus, the letter and the policy are inconsistent regarding assignment, and the policy does not prohibit assignment.

Pursuant to 11 U.S.C. § 363, the Trustee succeeded Debtors as the recipient of the structured settlement annuity payment rights and has legal authority to sell such payments.

By this Motion, the Trustee seeks to sell the Annuity to Buyer for the lump sum of $112,000 subject to overbid.

**3.    TERMS OF THE SALE**

The sale is for outstanding future payments due on the Annuity from April 1, 2017 to December 1, 2027, which total $201,232.50.  Buyer has agreed to pay $112,000 for the Annuity.  If the Buyer is the highest bidder at the sale and the sale is approved by both the Bankruptcy Court and the Superior Court (which is required for a sale of annuity under the California Insurance Code), Buyer shall pay the Estate $112,000 in certified funds within five business days of receipt of a certified copy of an order approving the Agreement by the Superior Court.  No rights in and to the Annuity or the Assigned Payments shall transfer to Buyer unless and until Buyer timely delivers to the Trustee the Assignment Price in full.  The sale of the Annuity is as

11

is/where is with no representations or warranties.  A copy of the Assignment Agreement  is

attached as Exhibit "3" to the Declaration of Peter J. Mastan.  The Buyer shall obtain approval of

the sale from the Superior Court once a final order approving the sale is entered by this Court.

**4.    OVERBID PROCEDURES**

The Trustee requests that the sale of the Annuity be subject to overbid, which bidding

shall take place at the hearing on the Motion.  The Trustee has established the following overbid

procedures, which shall govern any bidding:

a.    Any person or entity (other than Settlement Capital Corporation) that is interested

in purchasing the Annuity must appear at the hearing on the Motion and bring a deposit of

certified funds in the amount of the bid.  Unless otherwise permitted by the Court, any bidder

that fails to submit a timely, conforming bid shall be disqualified from bidding for the Annuity.

b.    The Trustee, subject to the rights of a bidder or party in interest to raise an issue

with the Court, shall have sole authority to determine whether a party is a qualified bidder.

c.    Bids are irrevocable and any bid must remain open until the conclusion of the sale

to be held at the hearing on this Motion.

d.    Any overbid must provide for a minimum purchase price of at least $117,000.

Additional overbids must be in increments of $5,000.

e.    Any overbidder must agree to the same terms as the Assignment Agreement

between Settlement Capital Corporation and the Trustee.

f.    Any overbid must be for the Annuity "as is, where is" and shall not contain any

financing, due diligence, or any other contingency or any breakup fee, termination fee, or any

similar fee/expense reimbursement.

g.    Any overbid must be made by a person or entity that has completed its due

diligence review of the Annuity and is satisfied with the results.

h.    The purchase price must be in the form of certified funds or cashier's check

payable to the Trustee, which amount shall be nonrefundable if the bid is determined by the

Court to be the highest and best bid for the Annuity.

12

i.      All bidders shall be deemed to have consented to the core jurisdiction of the

Bankruptcy Court and to have waived any right to jury trial in connection with any disputes

relating to the sale of the Annuity.

**5.      SALE PERMITTED DESPITE ANTI- ALIENATION LANGUAGE**

The sale of the Annuity is permitted despite the anti-alienation language in the settlement

and the letter accompanying the policy.  Contractual anti-alienation provisions and prohibitions

on the assignment or transfer of structured settlement agreements are unenforceable under

applicable California and in bankruptcy under Bankruptcy Law.   11 U.S.C. § 541(c)(1)(A); *see

also In re Pipkins*, 2014 WL 2756552, at *8 (Bankr. N.D. Cal. June 16, 2014) (holding that

protections from creditors "provisions are unenforceable under 11 U.S.C. § 541(c)(1)(A)" and "a

prohibition [on the ability to transfer payments] would have been unenforceable under California

law"); *321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal.App.4th 1059 (2009)

("where no interested parties have objected, the anti-assignment provisions do not bar transfers

of structured settlement payment rights").

Here, the Annuity policy that the Trustee seeks to sell does not contain anti-alienation

language.  The language is contained in the settlement agreement and in a letter, which is not

part of the policy.  However, even if such language were in the Annuity, it would be

unenforceable under applicable law.  The Court should therefore approve the sale of the Annuity

to the Buyer.

**6.      GROUNDS FOR APPROVAL OF THE SALE**

Bankruptcy code § 704 requires a Chapter 7 Trustee to, among other things, "collect and

reduce to money the property of the estate."  *See* 11 U.S.C. § 704(a)(1).

A trustee is empowered to sell the estate's assets out of the ordinary course of business.

11 U.S.C. § 363(b).  *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995).  Approval

of such a sale is within the sound discretion of the Court.  *Committee of Equity Security Holders

v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2nd Cir. 1983); *In re Baldwin United

Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984).  The touchstone for granting permission to sell

assets outside of the ordinary course of business is the existence of a good business reason.

13

*Stephens Ind., Inc. v. McClung*, 789 F.2d 836 (6th Cir. 1986); *Lionel*, 722 F.2d at 1070. *Accord In re Walter*, 83 B.R. 14, 19-20, (9th Cir. BAP 1988).

In addition to the existence of a sound business reason, other requirements for approval of a sale of assets pursuant to § 363(b) include (1) accurate and reasonable notice of the sale, (2) a fair and reasonable price of the assets sold, and (3) "good faith," i.e., the absence of any lucrative or undisclosed deals for insiders. *In re Industrial Valley Refrigerator and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

California law provides additional statutory requirements in connection with the sale of a structured settlement annuity as set forth in California Insurance Code §§ 10134-10139.5. The applicable provisions of these code sections are:

(A)    The transferee provide the transferor with a separate written disclosure statement 10 or more days prior to the effective date of a transfer agreement accurately completed with the information that applies to the transfer agreement as required by Cal. Ins. Code, § 10136(b);

(B)    Notice of the proposed transfer and the application for its authorization must be filed with a court of competent jurisdiction, to wit, a court in the county in which the payee resides, see Cal. Ins. Code, § 10139.5(f)(1), and served on all interested parties pursuant to Cal. Ins. Code, § 10139.5(f)(2); and

(1)    The transfer of the structured settlement payment rights is fair and reasonable and in the best interest of the payee, taking into account the welfare and support of his or her dependents (Cal. Ins. Code, § 10137(a)

(2)    The transfer complies with the requirements of Cal. Ins. Code, §§ 10134 et seq., will not contravene other applicable law (Cal. Ins. Code, § 10137(b), and is

14

1    to be approved by a court as provided in Cal. Ins. Code,

2    § 10139.5.

3    In addition, concurrent with filing a motion for Superior Court approval of a structured

4    settlement annuity, the purchasing party must file with the Attorney General a copy of the

5    petition for approval of the sale, a copy of the written disclosure statement, a copy of the transfer

6    agreement, a copy of the annuity contract, any qualified assignment agreement, the underlying

7    structured settlement agreement.  Any agreement to transfer or sell a structured settlement is not

8    effective until the date on which a court enters an order approving the agreement.  Cal. Ins. Code

9    § 10136(c)(1).

10    It is submitted that the foregoing requirements under the California Insurance Code either

11    have been met or will be met prior to any scheduled hearing before the Superior Court.

12    **a.  Business Judgment**

13    11 U.S.C. § 704(a)(1) provides that a Chapter 7 Trustee shall "collect and reduce to

14    money the property of the estate for which such trustee serves, and close such estate as

15    expeditiously as is compatible with the interests of parties in interest."  Through counsel, the

16    Chapter 7 Trustee contacted several companies and individuals who are either in the business of

17    purchasing annuities or finding buyers to purchase annuities.  As a result of those efforts, the

18    Trustee was able to secure three offers for the estate's interest in the annuity.  While there was

19    offer one higher than the current offer of $112,000, it was later rescinded.

20    The Trustee believes that there is a sound business reason to sell the Annuity to the

21    Buyer.  The sale will provide $112,000 to be distributed to allowed claims immediately.  If the

22    Trustee does not sell the Annuity, creditors will have to wait several years to be paid in full.

23    **b.  Good Faith**

24    The sale is the result of arms length negotiations between independent parties.  The

25    Buyer is not an insider of Debtors or the Trustee. The sale will be subject to overbid.  Thus if

26    anyone is willing to pay more for the Annuity, such party may bid at the hearing.

27    **c.  Reasonableness and Fairness of the Sale**

28    California Insurance Code § 10137(a) requires that the transfer of structured settlement

15

payment rights is fair and reasonable and in the best interest of the payee, taking into account the welfare and support of dependents.  Likewise, 11 U.S.C. § 363(b) requires that the sale price be fair and reasonable.

The sale is reasonable and fair because it is in the best interest of the Estate to liquidate Debtors' Estate and pay creditors the maximum amount due such creditors now, as opposed to waiting for the payments to be received over the coming years.  If approved, the Trustee will receive $112,000 from this transaction.  The cost of keeping the Estate open for several years far outweigh the amounts to be received and distributed now to the creditor body.

**d.  Required Disclosure**

The separate written disclosures are attached as Exhibit "1" to the Agreement, which is attached to the Declaration of Peter J. Mastan as Exhibit "3."

**e.  Proper Document Presented to the Court**

California Insurance Code § 10139.5(f)(2) requires that a notice of the proposed transfer and the application for its authorization be filed with the Court and served on all interested parties not less than 20 days prior to the scheduled hearing on any petition for approval of a transfer of structured settlement payment rights.  This notice must include the following documents:

(1)    A copy of the transferee's current petition (which is this Motion and any motion to be filed with the Superior Court) and any other prior petition whether approved or withdrawn; that was filed with this court in accordance with California Insurance Code §10139.5(c)(6).

The Motion will be served on all parties entitled to notice in this case.  No prior petition to sell the Annuity has been filed by the Trustee.

(2)    A copy of the proposed transfer agreement and disclosure form required by California Insurance Code §10139.5(a).

The agreement is attached as Exhibit "3" to the Declaration of Peter J. Mastan ("Mastan Declaration").  The disclosure form is attached as Exhibit "1" to the Agreement.

(3)    A listing of each of the payee's dependents, together with each dependent's age, if any.

16

The payee is now the Estate, which has no dependents.

(4)    A copy of the disclosure required by California Insurance Code §10136(b).

The disclosure is attached as Exhibit "1" to the Agreement.

(5)    A copy of the annuity contract and a copy of any qualified assignment agreement, if applicable.

The annuity contract is attached as Exhibit "2" to the Nicastro Declaration.  The Qualified Assignment is attached as Exhibit "4" to the Nicastro Declaration.

(6)    A copy of the underlying settlement agreement, if available.

The settlement agreement contains a confidentiality provision.  It can be filed by the Court under seal if requested by a party in interest or the Court.

(7)    Proof of Service showing compliance with the notification requirements of this sections.

 The required Proof of Service will be filed with the Superior Court by the Buyer.

(8)    Notification that any interested party is entitled to support, oppose, or otherwise respond to the Trustee's, either in person or by counsel, by submitting written comments to the Court or by participating in the hearing.

This language is included in the Notice of the Motion, which is being served on all parties entitled to notice in this case.  A notice with this language will also be served in connection with approval of the sale by the Superior Court.

(9)    Notification of the time and place of the hearing and notification of the manner in which and the time by which written responses to the application must be filed, which may not be less than 15 days after service of the Trustee's notice, in order to be considered by the Court.

This language is included in the Notice of the Motion, which is being served on all parties entitled to notice in this case.  A notice with this language will also be served in connection with approval of the sale by the Superior Court.

(10)    If the payee entered into the structured settlement at issue within five years prior to the date of the transfer agreement, then the transferee shall provide notice to the payee's attorney of record at the time the structured settlement was created.

17

This is not applicable here.

**f.  Advisory Statement**

California Insurance Code § 10139.5(h) requires that no later than the time of filing of the petition for court approval, the transferee shall advise the payee of the payee's right to seek independent counsel and financial advice in connection with the transferee's petition for court approval of the transfer agreement, and that the transferee shall further advise the payee that if the payee retains counsel, a licensed certified public accountant, or a licensed actuary in connection with a petition for an order approving the transfer agreement, then the transferee shall pay the fees of the payee's counsel, accountant, or actuary, regardless of whether the transfer agreement is approved, and regardless of whether the attorney, accountant, or actuary files any document or appears at the hearing on the application for transfer, in an aggregate amount not to exceed one thousand five hundred dollars ($1,500).  Further, that such advice may not be provided by an accountant, counsel, or actuary of the transferee.

Section 10139.5(h) assumes that the transferee will file a petition with the California Superior Court for approval of the sale, which the Buyer will do after approval of the sale to it by this Court.  Settlement Capital Corporation has provided the Trustee with the required advisory statement.  Thus, the Buyer and Trustee have complied with California Insurance Code § 10139.5(h).

**g.  Attorney General Notice**

The Buyer will provide notice of the sale to the Attorney General.

**h.  Additional Factors**

As of January 1, 2010, California Insurance Code § 10139.5 was amended to give the Court additional factors to consider in determining whether to grant a petition to sell a structured settlement annuity.  The following paragraphs address these factors.

1.      Payee's Financial Condition:

Since the seller is the Chapter 7 trustee of this Estate and charged with liquidating Debtor's assets, this factor does not apply.

71288v1/1028-003

2.      Whether the payee is transferring monthly or lump sum or all or a portion of the future payments:

The Trustee is transferring (a) guaranteed monthly payments of $645.86 from April 1, 2017 through August 1, 2027; (b) lump sum payment of $10,500 due on December 1, 2024; and (c) lump sum payment of $110,000 due on December 1, 2027.  The Trustee will receive $112,000 for this sale.

3.      Whether when the settlement was completed, the future periodic payments that are the subject of the proposed transfer were intended to pay for the future medical care and treatment of the payee relating to injuries sustained by the payee in the incident that was the subject of the settlement and whether the payee still needs those future payments to pay for that future care and treatment.

The future periodic payments that are the subject of the proposed transfer were not intended to pay for the future medical care and treatment, and this section is irrelevant given that the payee is now the Estate and all funds will go to pay allowed claims.

4.      Whether when the settlement was completed, the future periodic payments that are the subject of the proposed transfer were intended to provide for the necessary living expenses of the payee and whether the payee still needs the future structured settlement payments to pay for future necessary living expenses

The future periodic payments that are the subject of the proposed transfer were not intended to provide for necessary living expenses, and this section is irrelevant given that the payee is now the Estate and all funds will go to pay allowed claims

5.      Whether the payee is, at the time of the proposed transfer, likely to require future medical care and treatment for the injuries that the payee sustained in connection with the incident that was the subject of the settlement and whether the payee lacks other resources, including insurance sufficient to cover those future medical expenses.

The future periodic payments that are the subject of the proposed transfer were not intended to provide for medical care and treatment.  The payments were made in settlement of claims that the Debtors had arising out of the death of their dependent.  Furthermore, this section

19

is irrelevant given that the payee is now the Estate and all funds will go to pay allowed claims of the Estate.

6.      Whether the payee has other means of income or support, aside form the structured settlement payments that are the subject of the proposed transfer, sufficient to meet the payee's future financial obligations for maintenance and support of the payee's dependents, specifically including, but not limited to, the payee's child support obligations, if any.  The payee shall disclose to the transferee and the court her court-ordered child support or maintenance obligations for the court's considerations.

The Trustee was assigned as Trustee to assemble and liquidate the assets of the bankruptcy estate.  The Annuity is property of the Estate that must be liquidated.  Debtors have a valid partial exemption in the Annuity and will receive payment in that amount from the sale proceeds.

7.      Whether the payee completed previous transactions involving the payee's structured settlement payments and the timing and size of the previous transactions and whether the payee was satisfied with any previous transaction.

The Trustee has not completed previous transactions involving the structured settlement payments.

8.      Whether the transferee attempted previous transactions involving the payee's structured settlement payments that were denied, or that were dismissed or withdrawn prior to a decision on the merits, within the past five years.

The Trustee has not attempted previous transactions involving the structured settlement payments that were denied, or that were dismissed or withdrawn.

9.      Whether, to the best of the transferee's knowledge after making inquiry with the payee, the payee has attempted structured settlement payment transfer transactions with another person or entity, other than the transferee, that were denied, or which were dismissed or withdrawn prior to a decision on the merits, within the past five years.

Not applicable.  See question No. 8 above.

10.    Whether the payee, or his or her family or dependents, are in or are facing a hardship situation.

Debtors filed for bankruptcy protection due to their financial situation.  The Annuity is property of the Estate that the Trustee is charged with liquidating to pay allowed claims of the Chapter 7 Estate.

11.    Whether the payee received independent legal or financial advice regarding the transaction.

The Trustee is represented by counsel approved by this Court and has been advised in writing to seek independent professional advice regarding the sale.

Based on the foregoing, the Trustee believes that it is in the best of the bankruptcy estate to enter into this sale to the Buyer and requests that the Court approve the sale.

## 7.    WAIVER OF THE FOURTEEN-DAY PERIOD FOR EFFECTIVENESS OF SALE ORDER

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("FRBP") provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h). The legislative history provides:

> The court may, in its discretion, order that Rule 6004(g), now 6004(h)] is
> not applicable so that the property may be used, sold, or leased
> immediately in accordance with the order entered by the court.
> Alternatively, the court may order that the stay under Rule 6004(g) now
> 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in overbid procedures presented by this Motion, the Trustee believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that 6004(h) is not applicable and the Annuity may be sold immediately. Accordingly, the Trustee requests that the Court order that the sale may be effectuated immediately upon entry of the Order approving this Motion and authorizing the sale of the Annuity.

21

## 8.    GOOD FAITH PURCHASER DETERMINATION

The proposed Buyer is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m).  The good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction."  *See In re Industrial Valley Refrig. & Air Cond. Supplies, Inc.*, supra, 77 B.R. 15, 17. In this case, there is no proposed sale to an insider, nor have any insiders received any special treatment or consideration.

Based upon the foregoing, the Motion satisfies the standards for approval of a sale of the Annuity outside of the ordinary course of business pursuant to § 363(b) and good cause exists to make a finding that the Buyer or overbidder, if any, is purchasing the Annuity in "good faith" pursuant to Bankruptcy Code § 363(m).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

22

**9.    <u>CONCLUSION</u>**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order that provides that:

1.    The Motion is granted.

2.    The Trustee is authorized to sell the Annuity outside the ordinary course of business.

3.    The bidding procedures set forth herein are approved.

4.    The Trustee is authorized to sign all documents necessary to consummate the sale.

5.    The Trustee is authorized to pay the other costs of sale.

6.    The 14-day stay regarding the effectiveness of the order shall be waived.

7.    The Buyer is entitled to the protections set forth in 11 U.S.C. § 363(m) as a good faith purchaser.

8.    The Buyer shall be responsible for obtaining required approval from the Superior Court of the State of California.

Dated: February 24, 2017                    Respectfully submitted,


By: _/s/ Michael N. Nicastro_
MICHAEL N. NICASTRO
Counsel for PETER J. MASTAN
Chapter 7 Trustee for the Bankruptcy Estate of
Roberto Morales and Ramona Morales

23

## DECLARATION OF PETER J. MASTAN

I, PETER J. MASTAN, declare and state as follows:

1.      I am the duly appointed and acting Chapter 7 Trustee for the Bankruptcy Estate ("Estate") of Roberto Morales and Ramona Morales (the "Debtors") Case No. 2:16-bk-12727-DS.

2.      If called as a witness, I could and would competently testify to the following of my own personal knowledge, information and belief.

3.      On March 4, 2016, the Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.  I was appointed as Chapter 7 Trustee.

4.      I have reviewed the Court's Pacer website and obtained a copy of Debtors' Schedule B.

5.      At their 341(a) meeting, Debtors' testified that they received the settlement referenced in Schedule B as a result of their son's wrongful death in 1993.

6.      I reviewed the Court's Pacer website and learned that in Debtors' original Schedule C, the Debtors claimed the full value of the Annuity exempt under California Code of Civil Procedure §§ 704.140(d), 704.150(c) related to personal injury and wrongful death proceeds.

7.      I am informed and believe that my attorney contacted the Debtors' counsel and informed him of the error in claiming these exemptions because the Debtors' son was not a person on whom the Debtors were dependent.

8.      According to the Court's Pacer website, on June 3, 2016, Debtors filed an amended Schedule C claiming the full value of the Annuity exempt under California's wildcard exemption, California Code of Civil Procedure § 703.140(b)(5).  I am informed that my attorney contacted the Debtors' counsel and informed him of the error in claiming this exemption in the full value of the annuity because the wild card exemption is limited to $1,280 plus any unused homestead exemption under § 703.140(b)(1).

24

9.  According to the Court's Pacer website, on June 6, 2016, Debtors filed an amended Schedule C claiming $26,625 of the Annuity exempt under California's wildcard exemption.  Attached as Exhibit "1" is a true and correct copy of Debtors' June 6 Amended Schedule C.

10.  My attorney obtained a copy of the Debtors' settlement agreement, which required the purchase of the annuity and a copy of the annuity.  The settlement agreement contains a confidentiality provision.  The settlement also contains an anti-alienation provision.  Without disclosing the parties or the terms of the settlement agreement, I can disclose that the settlement agreement provided for the purchase of a Single Premium Annuity ("Annuity") for Debtors.

11.  According to the documents that my attorney received, the Annuity was issued by Commonwealth Life Insurance Company ("Commonwealth").

12.  I am informed that Commonwealth provided my attorney with a copy of the Qualified Assignment and a letter accompanying the Annuity policy.

13.  I believe that a sale of the Annuity to Settlement Capital Corporation for $112,000 is a sound business decision and should be approved by the Court because it appears to be fair market value, it is anticipated to make payment in full of the estate's obligations and it is anticipated to result in a substantial distribution of funds to the Debtors.  A true and correct copy of the assignment agreement is attached as Exhibit "3."

14.  The sale is the result of arms length negotiations between independent parties. The Buyer is not my insider, and I am informed and believe that the Buyer is not an insider of Debtors.

15.  I am informed that the Annuity was issued in settlement of claims that the Debtors had arising out of the death of their dependent.

/ / /

/ / /

/ / /

25

1

2    16.    I have no information to suggest that Debtors have completed previous

3    transactions involving the structured settlement payments.    I have not completed previous

4    transactions involving the structured settlement payments.

5

6    I declare under penalty of perjury under the laws of the United States of America, that the

7    foregoing is true and correct.

8    Executed on February 24, 2017 at Los Angeles, California.

9

10

11    PETER J. MASTAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

1

2

## DECLARATION OF MICHAEL N. NICASTRO

I, MICHAEL N. NICASTRO, declare and state as follows:

3

4

5

1.     If called as a witness, I could and would competently testify to the following of my own personal knowledge, information and belief.  I am an attorney at Nicastro Piscopo, APLC, attorneys for the Chapter 7 Trustee in this matter.

6

7

8

2.     At the Chapter 7 Trustee's direction, I contacted several companies and individuals who are either in the business of purchasing annuities or finding buyers to purchase annuities.

9

10

11

3.     As a result of these efforts, we were able to secure three offers for the estate's interest in the annuity.  While there was offer one higher than the current offer of $112,000, it was later rescinded.

12

13

14

4.     I contacted Commonwealth Life Insurance Company ("Commonwealth") to obtain documents related to the annuity.  A true and correct copy of the Annuity document that was received from Commonwealth is attached as Exhibit "2."

15

16

17

5.     Commonwealth also provided me with a copy of the Qualified Assignment and a letter accompanying the Annuity policy.  A true and correct copy of the Qualified Assignment and letter are attached as Exhibit "4."

18

19

20

21

22

6.     I also obtained a copy of the settlement agreement, which required the purchase of the annuity.  The settlement agreement contains a confidentiality provision.  The settlement also contains an anti-alienation provision.  Without disclosing the parties or the terms of the settlement agreement, I can disclose that the settlement agreement provided for the purchase of a Single Premium Annuity ("Annuity") for Debtors.

23

24

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

25

Executed on February 24, 2017 at Costa Mesa, California.

26

27

28

_/s/ Michael N. Nicastro_
MICHAEL N. NICASTRO

27

EXHIBIT 1

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Roberto Morales** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Ramona Morales** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:16-bk-12727** | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **2004 FORD F-150 75000 miles Good condition; KBB priv pty val**<br>Line from *Schedule A/B*: **3.1** | $3,842.00 | ☑ | $3,842.00 | C.C.P. § 703.140(b)(2) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Furniture & Furnishings**<br>Line from *Schedule A/B*: **6.1** | $1,000.00 | ☑ | $1,000.00 | C.C.P. § 703.140(b)(3) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Clothing**<br>Line from *Schedule A/B*: **11.1** | $300.00 | ☑ | $300.00 | C.C.P. § 703.140(b)(3) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Jewelry**<br>Line from *Schedule A/B*: **12.1** | $200.00 | ☑ | $200.00 | C.C.P. § 703.140(b)(4) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Cash On Hand**<br>Line from *Schedule A/B*: **16.1** | $40.00 | ☑ | $0.00 | C.C.P. § 703.140(b)(5) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

| Debtor 1 | **Roberto Morales** | | | |
|---|---|---|---|---|
| Debtor 2 | **Ramona Morales** | | Case number (if known) | **2:16-bk-12727** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Wells Fargo Checking**<br>Line from *Schedule A/B*: **17.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **Wells Fargo Savings**<br>Line from *Schedule A/B*: **17.2** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **401K Debtor**<br>Line from *Schedule A/B*: **21.2** | $4,100.00 | ■ $4,100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(E) |
| **401k Co-Debtor**<br>Line from *Schedule A/B*: **21.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(E) |
| **PERSONAL INJURY Proceeds from Wrongful Death Structured Settlement, for wrongful death of Debtors' son.  Set up as an annuity.**<br>Line from *Schedule A/B*: **53.1** | $229,004.48 | ■ $26,625.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |

3. **Are you claiming a homestead exemption of more than $155,675?**
   (Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

EXHIBIT 2

# COMMONWEALTH LIFE INSURANCE COMPANY

*A PROVIDIAN Company*

| | | | |
|---|---|---|---|
| **Annuitant** | Roberto Morales - Primary<br>Ramona Morales - Joint | Variable | **Annuity Amount** |
| **Date of Issue** | June 16, 1997 | Variable | **Annuity Interval** |
| **Annuity Commencement Date** | September 1, 1997 | | **Policy Number** |

## Our Annuity Agreement

We, Commonwealth Life Insurance Company, will pay, subject to the conditions and limitations of this policy, the Annuity Amount to the Annuitant if he or she is living on the Annuity Commencement Date. We will make these payments in accordance with the Annuity Option and Annuity Interval you elect.

We issue this policy in consideration of your application and the payment of the single premium.

Our Company and you, the Owner, are bound by the conditions and provisions of the policy.

## Right to Return Your Policy

The Owner may cancel this policy by returning it within 10 days of receipt. Return it to our Home Office or the agent through whom it was purchased. We will refund any premium paid to the Owner. We will consider the policy as if it had never existed.

## Read the Policy Carefully

This is a legal contract between the Owner and us. We are ready to help with any questions or problems with the policy. You may call upon your agent or our Home Office for assistance at any time.

Signed at our Home Office, Post Office Box 32800, Louisville, Kentucky 40232.

*Michael H. Sin*

Secretary

*Robert S. Green*

President

**Single Premium Immediate Annuity**

Annuity Amount Payable on Annuity Commencement Date

Dividends Will Not be Paid

## THIS POLICY MAY NOT BE SURRENDERED

Form No. AA93G                                                        FM-0545(9/90)

## Policy Index

| | Page | | Page |
|---|---|---|---|
| Policy Specifications ............................................3 | | Definitions ..........................................5 | |
| The Contract ...........................................................5 | | Ownership and Beneficiary ..............6 | |

Endorsements

POLICY SPECIFICATIONS

PLAN OF INSURANCE-SINGLE PREMIUM IMMEDIATE ANNUITY

| | | | |
|---|---|---|---|
| ANNUITANT | Roberto Morales - Primary Ramona Morales - Joint | Variable | ANNUITY AMOUNT |
| DATE OF ISSUE | June 16, 1997 | Variable | ANNUITY INTERVAL |
| ANNUITY COMMENCEMENT | September 1, 1997 | 013643CS01 | POLICY NUMBER |
| ISSUE AGE AND SEX | Female | Valuable Consideration | SINGLE PREMIUM |

**Owner, Beneficiary - As designated in the application, subject to the provisions of this policy.**

**BENEFIT:**
Annuity for 30 Years Certain Only plus guaranteed Lump Sum Payments.

We will pay $645.86 per month to the Payees, Roberto Morales and Ramono Morales,  beginning on the Annuity Commencement Date, if they are living on that date.  The final Annuity Amount payment will be made on August 1, 2027.

In Addition, we will pay the following guaranteed lump sum amounts:

| Amount | Date |
|---|---|
| $ 3,000 | June 1, 2003 |
| $ 4,000 | June 1, 2004 |
| $ 4,000 | June 1, 2005 |
| $ 4,800 | June 1, 2006 |
| $ 4,000 | June 1, 2007 |
| $ 5,000 | June 1, 2008 |
| $ 5,000 | June 1, 2009 |
| $ 5,675 | June 1, 2010 |
| $ 10,500 | December 1, 2024 |
| $ 110,000 | December 1, 2027 |

Upon the death of either Annuitant, we will continue to pay the Annuity Amount to the Surviving Annuitant for the remainder of the guaranteed period.

If both Annuitants die prior to receiving all guaranteed payments provided by this policy, we will pay any remaining guaranteed amounts, as they fall due,  to the Estate of the Annuitant last to die.

No additional amount is payable after all guaranteed payments have been made.

(This Page Intentionally Blank)

## DEFINITIONS

**This section contains the standard meaning of terms used in your policy.**

**YOU**
- "You" means the Owner of this policy. "Your" and "yours" also refer to the Owner.

**WE**
- "We" means our company. "Us," "our" and "ours" also refer to our company.

**ANNUITANT**
- "The Annuitant" is the person to whom we will pay the Annuity Amount if he or she is living on the Annuity Commencement Date.

**BENEFICIARY**
- "The Beneficiary" is the person or persons to whom we will pay a death benefit, if any, when the Annuitant dies.

**ISSUE AGE**
- "Issue Age" is the Annuitant's age on the Date of Issue. It is shown on the Policy Specifications Page.

**WRITTEN NOTICE**
- "Written Notice" is a request or notice in writing by you to us at our Home Office. It is how you let us know any requests you have, or changes you want to make to your policy.

**MATURITY DATE**
- The Maturity Date is shown on the Policy Specifications Page. It is the date the Annuity Amount becomes payable to the Annuitant.

**ANNUITY COMMENCEMENT DATE**
- The Annuity Commencement Date is the Date the first Annuity Amount becomes payable to the Annuitant.

## THE CONTRACT

**Your policy is a legal contract between you and us. Certain provisions are standard. This section gives these provisions and explains how they can affect their policy.**

**THE ENTIRE CONTRACT**
- The entire contract is made up of this policy and the written application. We attached a copy of the application at issue.

  All statements you made in the application, in the absence of fraud, are considered representations and not warranties. Only the statements made in the written application can be used by us to defend a claim or void this policy.

  Changes to this policy are not valid unless we make them in writing. They must be endorsed on or attached to this policy and signed by one of our Executive Officers.

**INCONTESTABILITY**
- We cannot contest the policy after its Date of Issue.

**MISSTATEMENT OF AGE OR SEX**
- We will make adjustments if the Annuitant's age or sex was misstated in the application. Benefits will be what the premiums paid would have bought at the correct age and sex.

5

**THE CONTRACT - Continued**

| | |
|---|---|
| **MISSTATEMENT OF AGE OR SEX - Continued** | • If we made an overpayment before the date of adjustment, we will subtract the amount overpaid from any benefits we pay after that date. If we made an underpayment before the date of adjustment, we will pay the amount underpaid in a lump sum after that date. |
| **NONPARTICIPATING** | • Your policy is nonparticipating. This means we do not pay dividends on it. Your policy will not share in our profits or surplus earnings. |

# OWNERSHIP AND BENEFICIARY

and

**This section describes the Owner and Beneficiary: who they are what their rights in this policy are.**

**OWNERSHIP**

• You, the Owner, are named in the application. You may make use of all rights of this policy while the Annuitant is living. These rights are subject to the rights of any assignee or living irrevocable beneficiary. "Irrevocable" means that you have given up your right to change the Beneficiary named.

If you die, the Contingent Owner, if one is named, will become the Owner. If there is no named Owner then living, the rights of ownership will vest in the executors, administrators or assigns of the Owner.

**BENEFICIARY**

• The Beneficiary is named in the application. More than one beneficiary may be named. The rights of any beneficiary who dies before the Annuitant will pass to the surviving beneficiary or beneficiaries unless you provide otherwise.

If no beneficiary is living at the Annuitant's death, we will pay the proceeds of this policy to you, your legal representatives or assigns.

The rights of any beneficiary will be subject to all the provisions of this policy. You may impose other limitations with our consent.

**CHANGE OF OWNERSHIP OR BENEFICIARY**

• You may change the Owner or the Beneficiary, unless an irrevocable one has been named, while the Annuitant is living. Change is made by Written Notice. The change takes effect on the date the notice was signed, if we acknowledge receipt of your notice in writing.

Any change is subject to any of our actions made before the date your notice was acknowledged. We may require return of this policy for endorsement before making a change.

**ASSIGNMENT**

• Only you may make an assignment of this policy. You must notify us if you assign this policy. We are not responsible for the validity or effect of an assignment. Any change you make is subject to any action we made before the date the notice was received.

6

**Single Premium Immedite Annuity**
Annuity Amount Payable on Annuity
 Commencement Date
Dividends Will Not be Paid

**THIS POLICY MAY NOT BE SURRENDERED**

Commonwealth Life
Insurance Company
680 Fourth Avenue
Post Office Box 32800
Louisville, Kentucky 40232

EXHIBIT 3

## ASSIGNMENT AGREEMENT

Subject to Bankruptcy Court approval, this Agreement ("Agreement") is made and entered into by and between: (1) Settlement Capital Corporation ("Buyer"); and (2) Peter J. Mastan in his capacity as trustee (the "Trustee") of the bankruptcy estate ("Estate") of Roberto Morales and Ramona Morales ("Debtors") in the bankruptcy case entitled *In re Roberto Morales and Ramona Morales*, Bk. Case No. 2:16-bk-12727-DS (the "Morales Case"), pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

## R E C I T A L S

A.      On March 4, 2016, the Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

B.      Peter J. Mastan was appointed as Chapter 7 Trustee ("Trustee").

C.      In Schedule B of the Debtors' bankruptcy schedules, the Debtors listed an interest in the proceeds from a wrongful death structured settlement for the wrongful death of Debtors' son (the "Settlement") in the sum of $229,004.48. The Trustee is informed that Debtors received the settlement as a result of their son's death in 1993.

D.      Settlement agreement provided for the purchase of a Single Premium Annuity from Commonwealth Insurance Company ("Annuity.") Settlement agreement contains a confidentiality provision.

E.      The Annuity was issued by Commonwealth Life Insurance Company ("Commonwealth"). The Annuity policy number is 013643CS01.

F.      The Annuity provides for guaranteed monthly payments of $645.86 to Debtors through August 1, 2027 plus several lump sum payments. The remaining outstanding lump sum payments due are $10,500 on December 1, 2024 and $110,000 on December 1, 2027. The payments due under the Annuity from January 1, 2017 through December 1, 2027 total $205,753.52.

1.

G.    On June 6, 2016, Debtors filed an amended Schedule C claiming $26,625 of the Annuity exempt under California's wildcard exemption.

H.    On the terms set forth below, and subject to Bankruptcy Court approval, the Trustee and the Buyer agree that the Trustee will assign the estate's rights to the Annuity, on an AS-IS and WHERE-IS basis, to the Buyer.

I.    The transactions contemplated herein shall be consummated pursuant to the terms and conditions of this Agreement, an "Approval Order" to be entered by the Bankruptcy Court in the Morales Case, and a "Superior Court Approval Order" to be entered by the Superior Court for the State of California.

## AGREEMENT

**NOW, THEREFORE,** on the terms and conditions and for the consideration set forth below, the Parties agree as follows:

**1.    <u>Incorporation of Recitals</u>**

Recitals A through I are incorporated into and made a part of this Agreement.

**2.    <u>Approval of Agreement</u>**

**2.1**    Except as provided in ¶¶ 2.2, 2.3, 2.4, 2.5, 2.6 and 2.7and 4-14, no Party shall have any rights, duties, or obligations under this Agreement unless and until the Bankruptcy Court enters an order (the "Approval Order") and the Approval Order, in substance (i) approves this Agreement, (ii) determines that this Agreement was made in good faith in an arm's-length transaction, and (iii) authorizes the Trustee to perform the terms of this Agreement.

**2.2**    The Trustee shall have the obligation to seek approval of this Agreement in accordance with ¶ 2.1 and shall file the motion (the "Approval Motion") seeking approval of this Agreement within 10 business days after the date on which the Trustee receives a fully executed copy of this Agreement (without any modification or interlineation). If the Approval Order is: (a) not entered within 90 days after the filing of the Approval Motion, or (b) appealed, then the Trustee may, in the unfettered exercise of his discretion, terminate his attempt to obtain the Approval Order by written notice to Buyer. If the Trustee terminates his attempt to obtain the Approval Order pursuant to this paragraph, then the Parties shall be as they were before they signed this Agreement. In

2.

the event that the Approval Order is entered and an appeal from the Approval Order is filed, but no stay of the Approval Order pending appeal is obtained, then the Trustee, in his unfettered exercise of discretion, may (but shall not be obligated to) perform this Agreement. Notwithstanding any other provision of this Agreement, (a) the Trustee shall have no obligation to defend any appeal from the Approval Order or to pursue any appeal from the denial of the Approval Motion, and (b) if Buyer fails to timely perform any act required of it prior to Court approval under this Agreement, the Trustee shall have no obligation to seek approval of this Agreement.

    **2.3**    The Buyer agrees to cooperate with and perform all acts reasonably requested by the Trustee to obtain entry of the Approval Order.

    **2.4**    Under California State Law, this Agreement must be approved by the Superior Court of California (the "Superior Court.") Pursuant to California law, the assignment of the Annuity is not effective until at least the date on which the Superior Court enters a final order approving this Agreement.

    **2.5**    Buyer shall have the obligation to seek approval of this Agreement from the Superior Court and shall file the motion (the "Superior Court Approval Motion") seeking approval of this Agreement within 10 business days after the date on which Buyer receives a copy of the Approval Order. If the Superior Court Approval Order is not entered within 100 days after Buyer's receipt of the Approval Order, then the Trustee may, in the unfettered exercise of his discretion, terminate this Agreement.

    **2.6**    Buyer shall be responsible for obtaining an order from the Superior Court approving this Agreement. Buyer must use best efforts to obtain Superior Court approval of the Agreement. If the Superior Court does not approve the Agreement, the Trustee shall no longer be bound to sell the Annuity to Buyer. The disclosures required to be made by Buyer to the Trustee as the seller of the Annuity are attached as Exhibit "1" to this Agreement and incorporated as part of the Agreement. Buyer acknowledges that there is a confidentiality provision in connection with the underlying settlement agreement related to the Annuity and agrees to not to file or disclose any documents which would violate that security agreement or will file such documents/disclosures under seal.

**2.7**    The Trustee agrees to cooperate with and perform all acts reasonably requested by the Buyer to obtain entry of the Superior Court Approval Order.

**3.    Sale of Annuity**

**3.1**    The Trustee agrees to sell to Buyer all of the Estate's rights to and interest in the Annuity, including without limitation, the following payments, which the Estate has received or is due to receive under the Annuity:

      o    Monthly payments in the amount of Six Hundred Forty Five and 86/100 Dollars ($645.86) each, commencing April 1, 2017 and continuing on the First (1st) of each month thereafter through and including August 1, 2027;

      o    $10,500 on December 1, 2024; and

      o    $110,000 on December 1, 2027.

("Assigned Payments"). .

**3.2**    The Trustee shall turn over to Buyer the estate's interest in the scheduled Annuity and any and all payments the Trustee may receive from April, 1, 2017 through the date the Bankruptcy Court and Superior Court enter final orders approving this Agreement. Payments due to the Trustee after entry of the Approval Order and Superior Court Approval Order shall be paid directly from the policy issuer to the Buyer or Buyer's assignee.

**3.3**    The Trustee shall take such steps as are reasonably necessary to direct the issuer of the Annuity to make any Assigned Payments to the Buyer or Buyer's assignee. If the Approval Order and Superior Court Approval Order are final and Trustee receives any payments from the Annuity issuer after April 1, 2017, the Trustee shall turn those payments over to the Buyer.

**3.4**    In return for selling and assigning the estate's interest in the Annuity and assigned payments, Buyer shall pay the Trustee the sum of One Hundred Twelve Thousand and No/100 Dollars ($112,000.00) (the "Assignment Price"). Buyer shall pay the Trustee One Hundred Twelve Thousand and No/100 Dollars ($112,000.00) within 5 business days after Buyer receives a certified copy of an order approving this Agreement by the Superior Court. If the Annuity is sold by overbid to Buyer, the amount of the winning overbid must be paid within 5 business days of Buyer's receipt of a certified

4.

copy of an order approving this agreement by the Superior Court. No rights in and to the Annuity (including no rights in and to the Assigned Payments) shall transfer to Buyer unless and until Buyer timely delivers to the Trustee the Assignment Price (in full) and the Assignment Price has cleared the banking process. The Assignment Price shall be made by check or wire transfer representing immediately available funds payable to "Peter Mastan, Trustee."

3.5    The Addendum to Assignment Agreement Comporting with Insurance Code §10134-10139.5 and all disclosure statements the Trustee receives from Buyer, which are attached as Exhibit "1" to this Agreement, in connection with this transaction are to be considered as incorporated into, and form part of the terms of this Agreement and shall be read as if the contents of the disclosure statements were set forth in full in the body of this agreement.

4.    **Trustee's Representations**

In order to induce Buyer to proceed with this transaction, the Trustee is making the following representations:

a.    The Trustee is the duly appointed and acting trustee for the Bankruptcy Estate of Debtors.   Subject to Section 2 of this Agreement, the Trustee is authorized to enter into this Agreement on behalf of the Estate.

b.    Trustee believes that no one other than the Estate and the Debtors have any interest or claim of any kind or nature in, to or under the Assigned Payments.

c.    The Trustee has been informed by Debtors that Debtors are not receiving the payments under the Annuity as a result of a workman's compensation claim.

d.    The Estate is not indebted to anyone that would in any way affect either the assignment of the Assigned Payments referenced above or Buyer's absolute rights to receive the Assigned Payments.

e.    Subject to the terms of this Agreement, Trustee agrees to conduct his affairs so that Buyer receives any Assigned Payments exactly in the amounts, and exactly at the times stated in paragraph 3.1 above (subject to obtaining an Approval Order and Superior Court Approval Order).

5.    **Buyer's Acknowledgments**

a.    Within 5 business days after the date on which Buyer receives a fully executed copy of this Agreement, Buyer shall conduct an investigation and the due diligence it deems necessary with respect to the Assigned Payments. Before Buyer files the Superior Court Approval Motion, Buyer shall be satisfied that there are no claims or interests of any kind or nature that do or could affect its rights to or interest in the Assigned Payments and/or prevent or interfere with the receipt of the Assigned Payments on the dates and in the amounts described above, exactly in such amounts and at the times set forth therein.

5.

**b.** The Estate's assignment of the Assigned Payments pursuant to this Agreement is on an "AS–IS," "WHERE IS" basis, subject to all encumbrances, liens, and restrictions thereon, without recourse of any kind or nature, without any representation or warranty whatsoever, whether express or implied.

**c.** Buyer has had the opportunity to consult with legal counsel of its choice concerning this Agreement, including the meaning of the terms thereof and agrees to be bound to those terms.

## 6. <u>Attorneys' Fees And Costs</u>

**6.1** Each Party shall bear his/its own attorneys' fees, expenses and costs incurred in connection with the subjects and preparation of this Agreement.

**6.2** Nothing in this Agreement shall be interpreted or construed to waive or release any right of the Trustee and/or his professionals to seek compensation and reimbursement from the Estate.

## 7. <u>Entire Agreement</u>

**7.1** This Agreement constitutes the entire understanding between the Parties with respect to its subject matter, including any and all obligations and commitments of the Trustee and Buyer. This Agreement supersedes and replaces in their entirety any and all prior negotiations or understandings, whether oral or written.

**7.2** This Agreement has no terms other than those expressly set forth herein. Each Party represents and warrants to the other party that he/it is not signing this Agreement in reliance upon any term, representation, or warranty other than those expressly set forth in this Agreement.

## 8. <u>Successors and Assigns</u>

The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, agents, representatives, successors, and assigns.

## 9. <u>Governing Law; Jurisdiction; Choice of Forum</u>

**9.1** This Agreement shall be construed in accordance with and governed by the substantive laws of the State of California (without regard to California law concerning choice of law).

**9.2** Each Party consents to the exclusive personal jurisdiction and venue of the Bankruptcy Court for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Agreement. In the event that the

6.

Bankruptcy Court lacks or does not exercise jurisdiction over any such dispute, each Party to this Agreement consents to the personal jurisdiction and venue of the Superior Court of the State of California for the County of Los Angeles and, to the extent not inconsistent with applicable law, to the personal jurisdiction and venue of the United States District Court for the Central District of California, Los Angeles, for the trial, entry of findings and entry of final orders and judgments with respect to any dispute arising out of this Agreement.

10.    **Waiver of Jury Trial**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE PARTIES' RIGHTS AND OBLIGATIONS WITH RESPECT THERETO.**

11.    **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.    **Authority To Sign**

Each person signing this Agreement on behalf of a Party represents and warrants to the other Party that he/she has the requisite power and authority to execute and deliver this Agreement on behalf of that Party, and that this Agreement, when so executed and delivered, will be a binding obligation of and enforceable against such Party in accordance with its terms. Notwithstanding the foregoing, the Trustee's authority to sign this Agreement is subject to Bankruptcy Court and Superior Court approval as set forth elsewhere in this Agreement.

13.    **Notice**

**13.1**    Any notice, service, or demand under this Agreement shall be given by either (a) Federal Express or (b) hand delivery, and by no other means, as follows:

**To the Trustee:** Peter J. Mastan, Trustee, c/o Gumport | Mastan, 550 South Hope Street, Suite 1765, Los Angeles, California 90071-2604.

**To Buyer:** Settlement Capital Corporation, #TN-097585

14755 Preston Road, Suite 610, Dallas, TX 75254

7.

For purposes of notice given by Federal Express, notice shall be deemed effective upon "delivery" by Federal Express. Delivery for purposes of this paragraph shall mean Federal Express' actual delivery of the notice to the address of the other Party, without the requirement of any signature by the receiving Party. Additionally, the refusal to accept a notice attempted to be delivered by Federal Express at that Party's address set forth above shall be deemed to have been delivered to that Party at the time of such attempted delivery.

     **13.2**    Any Party may change the person to whom and/or the address to which notice to that Party shall be delivered by giving notice of such change in accordance with ¶ 13.1. In all events, the Parties shall designate an address to which Federal Express will deliver packages in the ordinary course of its business.

**14.**    <u>**Headings**</u>

     The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

Dated: January 30, 2017            CHAPTER 7 TRUSTEE

By:_____
                     Peter J. Mastan
                     Chapter 7 Trustee of the Bankruptcy
                     Estate of Robert Morales and
                     Ramona Morales

Dated: January 20, 2017            BUYER

By:_____
                     Debbie L. Rosen
                     President
                     Settlement Capital Corporation,
                     #TN-097585

8.

# EXHIBIT 1

## TO ASSIGNMENT AGREEMENT

ADDENDUM TO ASSIGNEMNT
AGREEMENT
COMPORTING WITH INSURANCE
CODE §10134-10139.5

**Peter J. Mastan, as Chapter 7 Trustee of the Bankruptcy Estate of Roberto Morales and Ramona Morales ("You," Transferor,"), pursuant to the Assignment Agreement, agrees to sell to Settlement Capital Corporation, a Texas corporation ("Buyer," "Transferee") and its assigns, through an assignment, all of his rights to and interests in the following payments:**

One Hundred Twenty Five (125) monthly payments in the amount of Six Hundred Forty Five and 86/100 Dollars ($645.86) each, commencing April 1, 2017 and continuing on the First (1st) of each month thereafter through and including August 1, 2027; One (1) lump sum payment in the amount of Ten Thousand Five Hundred and No/100 Dollars ($10,500.00) due and payable December 1, 2024; and One (1) lump sum payment in the amount of One Hundred Ten Thousand and No/100 Dollars ($110,000.00) due and payable December 1, 2027 (the "Assigned Payments").

In return [or compensation] for selling and assigning the rights to receive these payments, and pursuant to the Assignment Agreement,   the Transferee shall pay me, in my capacity as Chapter 7 Trustee of the Bankruptcy Estate of Roberto Morales and Ramona Morales, the sum of: One Hundred Twelve Thousand and No/100 Dollars ($112,000.00) (the "Assignment Price").

**IMPORTANT TERMS:**

**You have agreed to sell to the transferee future payments totaling Two Hundred One Thousand Two Hundred Thirty Two and 50/100 Dollars ($201,232.50) in exchange for a purchase price of One Hundred Twelve Thousand and No/100 Dollars ($112,000.00).**

**Those future payments have a discounted present value equal to One Hundred Sixty Four Thousand Four Hundred Fifty Two and 81/100 Dollars ($164,452.81), calculated by applying the discount rate of 2.4% percent utilized by the Internal Revenue Service to value annuities in probate proceedings.**

**The purchase price to be paid to you was calculated using a discount rate of 7.471%.**

**The purchase price payable to you is less than the present value of the future payments stated above because the discount rate of your transaction is greater than the rate utilized by the Internal Revenue Service.**

**For comparison purposes:**

**If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of One Hundred Twelve Thousand and No/100 Dollars ($112,000.00) and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying for that loan would be 7.471% per year.**

- Aggregate amount of all expenses, if any, to be deducted from the purchase price to be paid to the Payee in exchange for the payments to be transferred: NONE.

- To figure the net amount we are paying, we have charged you for the following expenses:

  Legal Fees: $0.00
  Processing Fee: $0.00

  For a total of $0.00 in expenses.

- The discounted present value of all structured settlement payments to be transferred: One Hundred Sixty Four Thousand Four Hundred Fifty Two and 81/100 Dollars ($164,452.81). This is the value of your structured settlement in current dollars.

- The most recently published applicable federal rate for determining the present value of an annuity, as issued by the United States Internal Revenue Service and used to determine the discounted present value of the Assigned Payments: 2.4%

- YOU WILL BE PAYING THE EQUIVALENT OF AN INTEREST RATE OF 7.471% PER YEAR.

- Based on the net amount that you will receive from us and the amounts and timing of the structured settlement payments that you are transferring to us, if the transferred structured settlement payments were installment payments on a loan, with each payment applied first to accrued unpaid interest and then to principal, it would be as if you were paying interest to us of 7.471% per year, assuming funding on the effective date of transfer.

- The quotient (expressed as a percentage) obtained by dividing the net payment amount by the discounted present value of the payments: 68.10%

- You should obtain independent advice regarding any federal and state income tax consequences arising from the proposed transfer. We may not refer you to any specific advisor for that purpose.

- Assignee shall pay the fees of payee's counsel, accountant, or actuary, regardless of whether the Transfer Agreement is approved, regardless of whether the attorney, accountant, or actuary files any document or appears at the hearing on the application for transfer, in an aggregate amount not to exceed one thousand five hundred dollars ($1,500). The Assignee's accountant, counsel, or actuary may not advise the payee.

- The court approving the transfer agreement retains continuing jurisdiction to interpret and monitor implementation of the agreement as justice may require.

A. Assignee's obligation to complete this transaction and to pay you the Assignment Price depends upon Assignee receiving a final non-appealable court order sufficient to recognize, authorize, and provide for the transfer by assignment of the Assigned Payments to Assignee, and to insure that the Periodic Payments due on or after the day of the Order will be forwarded directly to Assignee.

B. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

C. The court approving the transfer agreement retains continuing jurisdiction to interpret and monitor implementation of the agreement as justice may require.

D. Pursuant to California law, this Transfer Agreement is not effective until the date on which a court enters a final order approving the transfer agreement. Payment to you will be delayed up to 30 days or more after the date you sign this transfer agreement in order for the court to view and approve transfer agreement

E. All disclosure statements you receive from us in connection with this transaction are to be considered as incorporated into, and form part of the

terms of this Agreement and shall be read as if the contents of the disclosure statements were set forth in full in the body of this agreement.

F. If you believe you were treated unfairly or were misled as to the nature of the obligations you assumed upon entering into this agreement, you should report those circumstances to your local district attorney or the office of the Attorney General.

> **You have the right to cancel this agreement without any cost or obligation until the date the court approves this agreement. You will receive notice of the court hearing date when approval may occur. You must cancel in writing and send your cancellation to: Settlement Capital Corporation, #TN-097585 Structured Settlement Legal Department, 14755 Preston Rd., Suite 610, Dallas, TX 75254**

**Agreed to by Assignor:**

**Peter J. Mastan, as Chapter 7 Trustee of the Bankruptcy Estate of Roberto Morales and Ramona Morales**

1/30/17

**Date**

**Accepted:**

**Settlement Capital Corporation, a Texas Corporation**
**Tax ID 75-2253261**

**Debbie L. Rosen, President**

2/16/2017

**Date**

EXHIBIT 4

## QUALIFIED ASSIGNMENT

"Claimant":       Roberto Morales and Ramona Morales

"Assignor":       ~~[redacted]~~

"Assignee":       Providian Assignment Corporation

"Annuity Issuer":   Commonwealth Life Insurance Company

"Effective Date":   July 1, 1997

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A.  Claimant has executed a settlement agreement or release dated _____ 6/13_, 19 97 (the "Settlement Agreement") which provides for the Assignor to make certain Periodic Payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B.  The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1.  The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payments not specified in Addendum No. 1.

2.  The Periodic Payments constitute damages on account of personal injury or sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code.

3.  The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased, nor may any of them be anticipated, sold, assigned or encumbered.

4.  The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

6.  The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer. All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively.

7.  The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights or of ownership or control over the Annuity or against the Annuity Issuer.

8. Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9. In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset" purchased hereunder to

Assignor, and Assignee's liability for the Periodic payments shall terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

Assignor: _____

By: _____

Title _____

Providian Assignment Corporation

Assignee: _____

By: _____

*Authorized Representative*

Title _____

**August 7, 1997**

ROBERTO AND RAMONA MORALES
4240 ABNER STREET # 6
LOS ANGELES CA 90032

RE: Policy #▮▮▮▮▮▮▮

We're pleased that Commonwealth Life Insurance Company has been selected as the issuer of the Structured Settlement payments outlined in the enclosed annuity contract. You can expect to receive excellent service over the years.

If you wish, we can deposit your payments directly into your bank account. The enclosed Electronic Funds Transfer form will enable you to access this convenient feature. Simply complete the form, have your signature guaranteed by your local bank and return it to us; we'll take care of the rest.

For your protection, please note that as the annuitant and/or payee of this contract, you cannot revise the benefit payments in any way. The payments cannot be sold, assigned, accelerated or encumbered. These rights are held by the annuity owner. Please read the contract carefully to ensure you're familiar with your payment schedule as well as the terms that have been agreed upon.

We're always happy to answer any questions about your payments or to provide you with information on other Providian financial products and services. You can reach Providian Client Services between 9 a.m. to 5 p.m. Eastern Time, Monday through Friday by calling **1-800-866-0002** and selecting Option 2.

Sincerely,

*Providian Client Services*

Enclosures

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
575 Anton Blvd., Suite 1050
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF STRUCTURED SETTLEMENT ANNUITY; DECLARATIONS OF PETER J. MASTAN AND MICHAEL N. NICASTRO; AND EXHIBITS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **2/24/2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

  - **Peter L Lago**   pllago@msn.com
  - **Peter J Mastan (TR)**   pmastan@gumportlaw.com, pmastan@ecf.epiqsystems.com
  - **Michael N Nicastro**   courtfiling@np-attorneys.com
  - **Ramesh Singh**   claims@recoverycorp.com
  - **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
  - **Michael D Vanlochem**   janguiano@vandc.net

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) **2/24/2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **2/24/2017,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/24/2017 | Rosanna M. Sumera | |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

Judge
Hon. Deborah J. Saltzman
United States Bankruptcy Court
255 East Temple St., Suite 1634
Los Angeles, CA 90012

Debtor
Roberto Morales
4240 Abner St., Apt 6
Los Angeles, CA 90032

Co-Debtor
Ramona Morales
4240 Abner St., Apt 6
Los Angeles, CA 90032


Debbie L. Rosen
Settlement Capital Corporation
14755 Preston Road, Suite 610
Dallas, TX 75254


Matt Bracy
Scheef & Stone, L.L.P.
2600 Network Blvd., Suite 400
Frisco, TX 75034


Brad Naso
Melville Capital
127 Broadway, Suite 202 203
Santa Monica, CA 90401

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    F 9013-3.1.PROOF.SERVICE



Recovery Management Systems Corporation
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Academy Collection Servivce Inc.
P.O.Box 21089
Philadelphia, PA 19114-0589

American Cordious International LLC
2420 Sweethome Rd # 150
Amherst, NY 14228-2244

American Express Centurion Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Amex
P.o. Box 981537
El Paso, TX 79998-1537

Amex
PO BOX 3001
16 General Warren Blvd
Malvern, PA 19355-1245

Asset Recovery Soluctions LLC
2200 Devon Ave #200
Des Plaines, IL 60018-4501

Bank Of America
4161 Piedmont Pkwy
Greensboro, NC 27410

Chase
P.o. Box 15298
Wilmington, DE 19850-5298

Collection Consultants
6100 San Fernando Rd Ste
Glendale, CA 91201-2280

Dept Of Education/neln
121 S 13th St
Lincoln, NE 68508-1904

Enhanced Recovery Co L
8014 Bayberry Rd
Jacksonville, FL 32256-7412

Enhanced Recovery Co L
ATTENTION: CLIENT SERVICES
8014 Bayberry Rd
Jacksonville, FL 32256-7412

Gl Recovery Group
Po Box 25208
Anaheim, CA 92825-5208

Hy Cite/royal Prestige
333 Holtzman Rd
Madison, WI 53713-2109

Kaiser Foundation Health Plan Inc.
File 50445
Los Angeles, CA 90074-0001

Lvnv Funding Llc
Po Box 10497
Greenville, SC 29603-0497

Merchamts Credit Guide Co.
233 W. Jackson Blvd
Chicago, IL 60606

Midland Funding
8875 Aero Dr Ste 200
San Diego, CA 92123-2255

Portfolio Recvry And Affil
120 Corporate Blvd Ste 1
Norfolk, VA 23502-4952

Portfolio Recvry And Affil
ATTN: BANKRUPTCY
Po Box 41067
Norfolk, VA 23541-1067

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Robert J. Colclough, III, Atty.
8550 Balboa Blvd., Ste. 232
Northridge, CA 91325-5806

Superior Court - Norwalk
Worldwide Asset v. Morales 09K09314
12720 Norwalk Blvd., Rm. 101
Norwalk, CA 90650-3195

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Worldwide Asset Purchasing II, LLC
5743 Corsa Ave., #225
Westlake Village, CA 91362-4027

Peter L Lago
8060 E Florence Ave Ste 305
Downey, CA 90240-3831

Peter J Mastan (TR)
550 S Hope Street, Suite 1765
Los Angeles, CA 90071-2669